IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE D. CLASS-GOMEZ,

Plaintiff,

v.                                                CIVIL NO. 23-1304 (HRV)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**OPINION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Jose D. Class-Gomez (hereinafter "Plaintiff" or "Mr. Class-Gomez") seeks review of the decision of the Acting Commissioner of the Social Security Administration (hereinafter "Commissioner") denying him disability benefits under the Social Security Act ("the Act"). (Docket Nos. 1, 20). The Commissioner has filed her brief arguing that the decision should not be disturbed. (Docket No. 23). After careful consideration of the record, and for the reasons set forth below, the Commissioner's decision is AFFIRMED.

**II.    LEGAL FRAMEWORK**

*A. Standard of Review*

Pursuant to 42 U.S.C. § 405(g), a reviewing Court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is thus limited. I am

tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual determinations, the decisions is bound to be upheld. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)(cleaned up). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. The Five-Step Sequential Evaluation Process

Under the Act, a person is disabled if he is unable to do her prior work and, "considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. Step one asks whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If he is, he is not disabled under the Act. *Id*. At step two, it is

determined whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii).  The plaintiff bears the burden of proof as to the first two steps. Step three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals the level of severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If, on the other hand, the plaintiff is not determined to be disabled at step three, his residual functional capacity ("RFC") must be assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four, which compares the plaintiff's RFC to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do his past relevant work, he is not disabled. *Id*. Finally, at step five, the plaintiff's RFC is considered alongside his "age, education, and work experience to see if [he] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v).  If the plaintiff can make an adjustment to other work, he is not disabled; if he cannot, he is disabled. *Id*.

### III.   BACKGROUND AND PROCEDURAL HISTORY[1]

On June 19, 2020, Plaintiff applied for disability insurance benefits. Tr. 764-65. The onset date for his alleged disability was May 27, 2019. *Id*.  When the Social Security Administration ("SSA") initially denied his claim for benefits on January 8, 2021, Tr.

---

[1] The background details are outlined from the information found in the Social Security Transcript (hereinafter "Tr."), which was was filed on August 2, 2023. (Docket No. 16).

655-658, Plaintiff sought reconsideration, which was also denied. Tr. 667-669. Plaintiff then requested in writing a hearing before an ALJ. Tr. 277-282. The hearing was held on December 2, 2021. Tr. 49-87. At the hearing, the ALJ received the testimonies of the following witnesses: Mr. Class-Gomez and vocational expert Janice Marrero. *Id*. at 49-87. The ALJ also received and reviewed documentary evidence, including extensive medical records. Plaintiff's earning records support sufficient coverage to remain insured through December 31, 2024. Tr. 30.

On March 16, 2022, the ALJ issued her written decision concluding that Plaintiff was not disabled within the meaning of the Act. Tr. 24-48. The ALJ specifically found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (Step One) which was undisputed, and that he suffered from the following severe impairments (Step Two): lumbosacral disorder, obstructive sleep apnea, asthma, bipolar disorder, major depressive disorder and generalized anxiety disorder. Tr. 32. While he suffered from other non-severe medical conditions, the ALJ concluded they only imposed minimal limitations in Plaintiff's ability to do work-related activities. Tr. 32-33.

At Step Three of the sequential evaluation process, Plaintiff was found not to have an impairment or combination of impairments meeting—or medically equaling—the severity of the ones listed in 20 C.F.R. Part 404, Subp. P., App. 1. With respect to the physical impairments, the ALJ thoroughly outlined why the medical evidence reviewed did not show that Plaintiff's lumbar spine condition, his respiratory conditions or the sleep-related condition met the criteria in the listings for severity. Tr. 33-34. Plaintiff's alleged mental impairments did not reach the required level of severity either. The ALJ specifically considered the criteria of listings 12.04 and 12.06. Tr. 34. Pursuant to "paragraph B", in order to meet the severity criteria, the mental impairments had to

result in either one extreme limitation or two marked limitations in a broad area of functioning.[2]

The ALJ found that Plaintiff had only moderate limitations in the functional areas of: (1) understanding, remembering and applying information; (2) interacting with others; (3) concentration, persistence or maintaining pace; and (4) adapting or managing oneself. *Id*. at 34-35. For instance, Plaintiff was found not to need reminders for his medication and personal care.  He was able to provide information regarding his medical and work histories during appointments, and was capable of cooking, shopping, and handling money.  In the area of interacting with others, although plaintiff alleged that he had problems getting along with family, friends and neighbors, and medical records demonstrated complaints of irritability, Plaintiff reported getting along well with authority figures and behaving appropriately during medical appointments. As for concentration, again, Plaintiff was the sole reporter of information during evaluations, drove to one of the appointments, and was able to explain his symptoms in a logical and coherent manner.  And in the area of managing himself, he was found to be capable of managing his anxiety and irritability, and among other things, generally presented adequate grooming and hygiene.  Therefore, the ALJ concluded that Plaintiff did not satisfy the "paragraph B" criteria for having two marked limitations or one extreme limitation. Similarly, his conditions did not satisfy "Paragraph C" criteria.[3]

---

[2] "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." Tr. at 34; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 ¶ B.

[3] 20 C.F.R. Pt. 404, Subpt. P, App 1 § 12.04 ¶ C:  the mental disorder must be "serious and persistent" in that there is a medically documented history of the existence of the disorder for a period of at least two years, and there is evidence of both:

As she was required to do at this step, the ALJ then determined the RFC of Mr. Class-Gomez, and concluded that he could:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that he needs the option to stand after every two hours of sitting, during normal breaks. The claimant can never climb ladders, ropes or scaffolds, but he can occasionally climb ramps/stairs, frequently balance, occasionally stoop, occasionally kneel, occasionally crouch, and occasionally crawl. The claimant can never work at unprotected heights, never work around moving mechanical parts, and never operate a motor vehicle. He can tolerate occasional exposure to humidity and wetness, occasional exposure to dust, odors, fumes and pulmonary irritants, and occasional exposure to extreme cold or extreme heat. He is able to perform simple, routine and repetitive tasks, but never at a production rate pace (e.g. assembly line work). He is able to make simple work-related decisions, deal with changes in the work setting of simple decisions, and interact frequently with supervisors, frequently with coworkers and frequently with the public.

Tr. 35-36.

Given the RFC determined, and as supported by the testimony of the vocational expert, the ALJ found that Plaintiff was unable to perform any past relevant work. (Step Four). Tr. 41. Lastly, at Step 5, the ALJ found that considering his age, education, past work and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 42. Again, accepting the testimony of vocational expert Janice Marrero, the ALJ concluded that Mr. Class-Gomez could make

---

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

a successful adjustment to other work and perform occupations such as call out operator, charge account clerk and parimutuel ticket checker. Tr. 42-43. In sum, the ALJ determined that from the alleged onset date to the date of the decision, Plaintiff was not under a disability. *Id*. at 43.

On March 14, 2023, the Commissioner's decision became final when the Appeals Council affirmed the ALJ's decision. Tr. 1-9.  On June 8, 2023, Plaintiff filed his Social Security Complaint. (Docket No. 1). The parties have filed their corresponding briefs. (Docket Nos. 20, 23).

IV.   ANALYSIS

Plaintiff raises three claims of error. First, he alleges that the ALJ erred in the determination of the physical aspect of his conditions by completely ignoring evidence that he suffered from headaches. Second, Plaintiff avers that the ALJ erred in her assessment of his back condition, in view of the consultative examiner's opinion, Dr. Gomez. And third, that the ALJ failed to properly assess the severity of Plaintiff's mental condition, particularly in what has to do with the area of ability to interact with others.  I address each of these claims of error in turn.

*A. Headaches*

Plaintiff contends that remand is necessary because the ALJ completely ignored evidence of his suffering from headaches.  In so doing, the ALJ did not determine the severity of the impairment, nor factored said medical condition in her determination of Mr. Class-Gomez' RFC.  The Commissioner counters that Plaintiff sought and received treatment for headaches for just about one month in the Spring of 2020, Tr. 1088, 1095, 1100, 1106, and that State-agency consultants found the headaches to be non-severe.  Further, the Commissioner seems to suggest that because the ALJ found persuasive the

opinions of, and relied primarily on, the State-agency consultants for her determinations, the ALJ must have also accepted their opinions regarding headaches, despite not making mention of said impairment. The Commissioner also contends that remand is not necessary because Plaintiff has failed to demonstrate any functional limitations resulting from headaches or to explain how the condition imposes any additional limitations on his ability to work.

As to this issue, I find that this is a close case. The complete failure of the ALJ to consider, or even mention headaches, would have automatically resulted in reversal had the scenario been slightly different. *See Rene Antonio B.O. v. Comm'r of Soc. Sec.*, No. 22-1156 (GLS), 2023 WL 5842289, 2023 U.S. Dist. LEXIS 161739 at *24 (D.P.R., Sept. 11, 2023)(reversing the decision of the Commissioner because the ALJ was required, but failed, to consider evidence of Plaintiff's headaches and to make a determination as to the severity of said impairment).

The difference between this case and *Rene Antonio B.O.*, *supra*, is that the existence of headaches as an impairment appear to be for a relatively small period of time (about one month), whereas in that case the record revealed that Plaintiff had a long history of suffering from the condition. Here, Plaintiff did not include headaches in his disability report, Tr. 793, did not mention the condition in his testimony at the hearing before the ALJ, and failed to establish on judicial review how the medical condition added any functional limitations to his ability to work above and beyond what the ALJ found. He had the burden of establishing this. *See Caterino v. Berryhill*, 366 F. Supp. 3d 187, 194 (D. Mass. 2019)(plaintiff failed to meet her burden of presenting sufficient evidence to show how the alleged impairment limited her functional capacity and even assuming the ALJ ignored evidence of fibromyalgia, any error was harmless.); *see also*

*Bryant v. Colvin*, CV 115-005, 2016 U.S. Dist. LEXIS 34784 *22 (S.D. Ga., Feb. 9, 2016)(rejecting claim that the ALJ ignored evidence of medical conditions that were not cited in the disability application not brought forth at the hearing before the ALJ.). Accordingly, I do not find that reversal is required with respect to this claim of error.

### B. Assessment of the Back Condition and Dr. Gomez' opinion

Plaintiff takes issue with several of the findings of the ALJ in relation to his lumbosacral disorder condition. For instance, Plaintiff highlights that the ALJ found that he did not report back pain or related symptoms in follow-up appointments from October 2018 through mid-2020, and that according to Exhibit 8F (Tr. 1085-1214), he went to said appointments by himself, walked unassisted and there were no abnormal musculoskeletal or neurological findings. There are medical records, Plaintiff says, that contradict the finding that he did not report back pain or related symptoms through mid-2020. Also, according to Plaintiff, nowhere in Exhibit 8F is there a note that Plaintiff went by himself to the medical appointment or walked unassisted.

Additionally, Plaintiff faults the ALJ for not fully accepting the opinion of the consultative expert (CE) Dr. Rene C. Gomez regarding his limitation of 2 to 3 hours sitting. The CE opined that Plaintiff could sit for two (2) to three (3) hours, stand for one (1) to two (2) hours and ambulate ad lib at his own pace on a flat surface. Tr. 1245. According to Plaintiff, the ALJ erred when it found the CE's assessment only partially persuasive. The Commissioner in turn responds that the ALJ's RFC determination is essentially consistent with the CE's opinion regarding sitting. In other words, the RFC finding that Plaintiff should have the option of changing positions (standing) after two (2) hours of sitting, is significantly in line with the CE's opinion that Plaintiff could sit for two (2) to three (3) hours.

As to these claims of error, I find that they do not establish that the ALJ's decision was not supported by substantial evidence. I have myself reviewed Exhibit 8F and could not find any notes suggesting that Plaintiff walked unassisted or went by himself to the medical appointments. But the Plaintiff does not point to anything showing that these two facts are inaccurate. In other words, his brief does not direct the Court's attention to any item of evidence affirmatively showing that he indeed walked assisted or that he went to the medical appointments accompanied.

On the other hand, the record is indeed devoid of evidence of back pain complains or treatment, as stated by the ALJ, between October 2018 and summer of 2020. Since the mention of "chronic lumbar degenerative disc disease" in October of 2018 by Dr. Sharon Millan (Exhibit 8F), the next report of back issues is in July of 2020, when Plaintiff had to go to the emergency room. (Exhibit 9F, Tr. 1215-126). The physical exams at that time showed tenderness in his vertebrae, but they were otherwise normal. *Id.* The symptoms improved with the administering of intra-muscular anti-inflammatory and pain medication. Likewise, records of treatment with a Physical Medicine and Rehabilitation Specialist in July, August and September of 2020 (Exhibit 12F, Tr. 1233-124) showed that Plaintiff continued to struggle with back pain issues. Nevertheless, subsequent treatment and studies established that the condition and symptoms did not worsen, nor new diagnosis were made. Thus, the ALJ accurately and reasonably took into consideration the extent of the impairment and the symptoms it generated—which she described as severe but not disabling—in fashioning the RFC. Said medical evidence did not justify a finding of a functional limitation more restrictive than sedentary work. Therefore, the Plaintiff fails to meet his burden of showing that absent the alleged errors, the resulting RFC would have been more limiting. Any error was harmless. *See Perez-*

*Torres v. Sec'y of Health and Human Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989)("Accordingly, if the likely outcome on remand in this case is clear and the same as that reached in the decision under review, making the administrative law judge's admitted error essentially harmless, the court may uphold the denial of the plaintiff's claim.").

I also agree with the Commissioner that the ALJ's assessment of the CE's opinion, even though found only partially persuasive, is not really at odds with the limitations found as to sitting.[4] To say that Plaintiff can sit for two (2) to three (3) hours and stand for one (1) to two (2) hours as found by the CE, is not that different than saying that plaintiff can sit for two (2) hours "except that he needs the option to stand after every two (2) hours of sitting during normal breaks." Tr. 35-36. Again, the ALJ thoroughly reviewed and outlined the medical evidence with respect to Plaintiff's back impairment, including records and studies within and outside of the relevant period. Her reasoning demonstrates a conscientious analysis, and her conclusions are objectively defensible.

While it is true that Dr. Gomez' evaluation showed that Plaintiff could not do straight right leg raises, had a mild limp and slight right-leg weakness (4/5), that same evaluation found normal deep tendon reflexes, and no evidence of loss of sensation or balance issues. Tr. 1243-1251. Further, Plaintiff could sit with both legs at 90 degrees, had a normal range of motion in his lumbar spine, as well as in other areas including lower extremities. *Id.* He could walk and stand; did not need an assistive device; and

---

[4] Dr. Gomez found that Plaintiff could sit for 2 to 3 hours, stand for 1 to 2 hours and ambulate ad lib at his own pace and on a flat surface. (Ex. 14F, Tr. 1245). He also found that Plaintiff has difficulty bending, squatting, kneeling, crouching and picking up more than light objects; and may have difficulty climbing up a hill, stairs or using pedals repeatedly with his right leg. (*Id.*).

drove to the examination. *Id.* These facts, when coupled with other objective evidence such as the results of studies in 2020 and 2021 (Exhibits 10F and 23F), more than amply justified the ALJ only giving partial weight to the opinion of the CE as to Plaintiff's limitations. In the end, I find that the ALJ considered all of the limitations objectively established by the record to correctly assess Mr. Class-Gomez' residual functional capacity.

### C. Mental Condition - Interacting with Others

Plaintiff points to his history of irritability and anger, including within the relevant period. Plaintiff even had altercations within his community. He contends that in assessing the severity of his mental conditions, the ALJ erred in finding only a moderate limitation in his ability to interact with others. Remand is warranted, Plaintiff argues, because a moderate limitation finding is appropriate under Paragraph B if his functioning is fair, but the ALJ was not equipped without expert testimony to interpret the medical evidence into functional limitations. This is especially true according to Plaintiff when the jobs identified by the vocational expert required more than just following instructions; they require interpersonal relationships in a work setting.

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff had no more than a moderate limitation in interacting with others. Since Plaintiff is challenging only this finding, his position must then be that he has an extreme limitation in this area. But there is no evidence, the Commissioner contends, showing that Plaintiff is completely unable to function on a sustained basis in the area of interacting with others. I agree.

To be sure, a plaintiff has a moderate limitation in a mental functioning area if his functioning in said area is "fair." 20 C.F.R., Pt. 404, Subpt. P. App. 1, 12.00. An extreme

limitation, on the other hand, means that the person cannot function in an area "independently, appropriately, effectively, and on a sustained basis." *Id*. While the record in this case undeniably shows that Plaintiff has had issues with irritability and anger in connection with his mental impairments, the finding that his impairment only imposed a moderate limitation in interacting with others is supported by substantial evidence. To begin with, there is evidence in the record that Plaintiff's anger and irritability issues have been addressed with medication. Tr. 541 (Ex. 24F). Although he reports an inability to get along with others, including his family and members of his community (Tr. 115), Plaintiff admits that he gets along with authority figures (Tr. 116), and has interacted cooperatively during medical appointments. Tr. 560, 564. Medical records considered by the ALJ demonstrate that Plaintiff has behaved adequately in medical appointments with Dr. Sharon Miller, and CEs. Tr. 1118, 1124, 1130. Similarly, when seeking emergency treatment for his back pain condition in July of 2020, or when he needed to be hospitalized for decompensating in July and August of 2021, the record shows that Plaintiff presented appropriate thought content, good judgment and insight and actively participated in group therapy. Tr. 577-83, 1216. Moreover, in his consultative psychological evaluation, Dr. Ivan Vazquez-Torres reported that Plaintiff communicated in a clear, logical and coherent manner. Tr. 462.

  The ALJ's determination of just a moderate limitation in the area of interacting with others is also consistent with the findings of State-agency consultants. Both Dr. Borges at the initial denial stage (Ex. 1A), and Dr. Cortes at the reconsideration level (Ex. 3A), found moderate limitations in the area of interacting with others. In fact, Dr. Cortes opined that Plaintiff had a moderate limitation in his ability to interact with the general public, but that he was not significantly limited in his ability to accept criticism from

supervisors or get along with coworkers and peers. Tr. 621-22. Hence the RFC determination of the ALJ that Plaintiff "is able to make simple work-related decisions, deal with changes in the work setting of simple decisions, and interact frequently with supervisors, frequently with coworkers and frequently with the public." Tr. 36.

Given the above, I must conclude that the ALJ's finding regarding the Paragraph B criteria is supported by more than a scintilla of evidence. Ultimately, the question is not whether the ALJ could have found an extreme limitation in a particular Paragraph B area, but whether her findings of a moderate limitation are supported by substantial evidence. *Martinez v. Comm'r of Soc. Sec.*, No. 19-1364 (BJM), 2021 WL 1235470, 2021 U.S. Dist. LEXIS 65007 at *32 (D.P.R., Mar. 21, 2021); *see also Rodriguez-Pagan v. Secr'y of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987)("'[E]ven if the record arguably could justify a different conclusion,'" the court must affirm "'so long as [the Commissioner's decision] is supported by substantial evidence.'").

## V.   CONCLUSION

For the reasons outlined above, I find that Plaintiff has failed to demonstrate that the Commissioner's decision is not supported by substantial evidence or that incorrect legal principles were applied. Accordingly, the Commissioner's decision to deny disability benefits to Plaintiff is hereby AFFIRMED.

**SO ORDERED**

In San Juan, Puerto Rico this 27th day of December, 2023.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE